Scofield, J.,
delivered the opinion of the court:
• By act of Congress of April 19, 1864 (13 Stat., 50), the Sec-, retary of War was directed “ to take and hold full, complete, and permanent possession, in behalf of the United States, of all the lands and shores of the island of Bock Island, * * * to be held and kept as a military reservation.”
The third section of the act authorized the appointment of commissioners to value the property so taken and report a plan of utilization.
In the act of June 27, 1866 (14 Stat., 75), among other provisions relative to said property, is an appropriation of $100,000 “ to secure water-power at the head of Bock Island.”
At that time the claimant was the owner of a valuable waterpower, with a dam and improvements, in the Mississippi Biver, opposite the island, on the Illinois side, and also the riparian owner of the lands ou the Illinois shore near to the waterpower.
Belative to this water-power the commissioners made the following recommendations, which were filed in the War Department :
*333 “First. The Moline Water-Power Company should convey to the United States the fee of the entire Moline water-power, and also grant to the United States the unrestricted use, in perpetuity, without charge, of so much of the bed of the river not already belonging to the United States as might be covered by the i>ool and wall necessary to develop the water-power and 10 feet outside of said wall, together with the right of access thereto from, the Illinois shore, at all times, for the purpose of constructing or of repairing said wall.
“ Second. The government to develop and maintain the power, so far as it could be done with the money theretofore appropriated and that whicli might thereafter be appropriated by Congress for that purpose.
“Third. The Moline Water-Power Company to have the use in perpetuity, free from all charge for rent or repairs, of one-fourth of the entire water-power developed, and also the right to rent for a specified time, at the rate of 50 cents per annum per square iuch of water-power, measured by the openings of watér-wheels, so much additional power as the Ordnance Department might deem expedient; and, further, that said company, its lessees or assigns, should have the right to place their wheels upon the 10 feet outside the wall, provided that the foundation of said wall should not thereby be disturbed nor the stability of the wall thereby endangered; and also, further, that the granting to the United States of the unrestricted use of the pool, the wall, and 10 feet outside the wall should not be so construed as in any manner to operate as a bar to the free use and occupation by said company, its lessees or assigns, of the same premises for all purposes connected with and incidental to the use of their portion of the water-power or such as might be leased by them, and such use should not interfere with or obstruct the United States in the free use of its portion of the water-power.
■ “Fourth. The works to be built by the government for the development of the power to be so arranged as to give to said company the free use of the power therein contemplated, to be used by said company, both as to the use of the fourth part, so far as might be practicable without impairing the power in use by the government to a disproportionate extent, and also to-the proposed power to be leased. The openings .in the dams intended for the use of the company to be of such size and in such position as said company might elect.
“ Fifth. Sixty thousand dollars of the then existing appro-priationHo be applied to the extension of the then stone dam on the Moline side, and $40,000 to the extension and repairs of the wing-dam and removal of such deposits as might be required for the extension and repairs of said wing-dam. That the use of the then existing water-power should not be unnecessarily obstructed during the construction of the proposed work, *334 nor should any rent be required until the improvement contemplated by the $100,000 appropriation should have been made.
“ Sixth. It was also further understood that neither occupant of said water-power should have the right to nor should allow others to obstruct either pool or water-way by sawdust or bark or other substances, to the detriment of the water-power or the sanitary condition of the vicinity.” -
March 2, 1867, Congress adopted the following joint resolution :
“ That the Secretary of War be, and he is hereby, authorized and empowered to carry into effect the recommendations of the commissioners appointed under acts of April 19, 1864, and June 27, 1866, relative to the Moline Water-Power Company and the water power at Rock Island, Illinois, as contained in the reports of said commissioners, and to make application for that purpose of the money heretofore appropriated for securing water-power at the head of Eock Island.” (14 Stat., 573.)
To “ carry into effect the recommendation of the commissioners,” the Secretary of War, August 20, 1867, entered into the contract sot forth in Exhibit A.
It will be observed that the commissioners recemmended that the claimant should transfer to the United States, with certain reservations, its entire water-power, and that “the government should develop and maintain the power, so far as it could be done with the money theretofore appropriated and that which might thereafter he appropriated by Congress for that purpose.”
In similar language the contract provides that “ the further development of said water-power, * * * together with the maintenance of that power, is to be done by the United States out of the appropriations applicable to those purposes and of any future appropriations that may be made applicable to the same.”
The only appropriation at that time applicable to this purpose was the $ 100,000 before mentioned. The third paragraph of the contract provides how that sum shall be expended, and no allegation is made that it was not expended as therein agreed.
All further development of the water-power was tq depend, by express agreement, upon future appropriations. The Secretary of War was not authorized by the joint resolution and the recommendations of the commissioners to bind Congress-to make future appropriations: nor did he undertake so to do.
*335 April 8,1869. tbe Secretary of War and claimant entered into another contract, which is set forth in Exhibit B. This contract, after reciting what had already been agreed upon between the parties, and that the government desired the right of way for a tail-race, and also the right to abut a dam against the claimant’s land, proceeded as follows :
“ Acting in the spirit of harmony and liberality toward the United States, the said Moline Water-Power Company hereby agrees to the following, viz:
“ 1st. That they will grant and cede to the Unitnd States the right of way over and through their land for said tail-race, which is to be of sufficient capacity for the purposes named, free of cost, and will also cede, free of cost, the right to abut a dam and wall against their land at two such points as the United States may select.
“2nd. That the United States shall construct and maintain a wagon bridge for the use of said company over and across said tail-race, at such point as shall be designated by said company, and make suitable dykes to prevent overflow of said com-' pany’s land. The United States shall be entitled to the building stone excavated from said tail-race, and half the amount of excavated earth remaining after dyking, with the right to remove the same over the company’s land.
“3rd. The United States shall resume, as early the present season as the stage of water will peimit, the development, and prosecute to completion, according to agreement, the upper portion of the water-power and the removal of deposits in the pool, and permit the company, .if they should desire, to put in a bulkhead at the lower end of the wall built last season, and attach the same to the shore of Bock Island, and remove the same when the water-power is completed.
“ 4th. This agreement to cede the land for tail-race and abutting dam and wall free of cost is to continue but two years from this date, and the United States government is to have the right to enter upon the premises for the purpose of going on with the work any time within the two years, by notifying the company that the canal mode of development has been adopted; and upon the completion by the United States of the conditions herein named as to the said upper portion, this company binds itself, its successors and assigns, to cede and convey to the United States the premises and privileges hereinbefore named, and also the right to discharge into the company’s tail-race the surface water from the island of Bock Island.”
Here the claimant agrees to what it- is willing to do, and what it is willing that the United States shall do in ease “the canal mode of development” should be adopted within two years. In form, the Secretary of War agrees to nothing, un *336 less it is to accept this as an offer by the claimant provided the United States should adopt “ the canal mode of development.” It professes to be done under the joint resolution of March 2,1867, aud could not in any event bind the government to do anything more than is therein authorized.
The Sundry Civil Appropriation Act of August 7,1882, contained the following provision :
“ For water-power at Rock Island Arsenal, Rock Island, Illinois :
“ For completing the improvement of the water-power pool, $30,000.
“ For deepening the canal, $55,000.
“ For placing in the wall or dyke six new openings'for waterwheels, $15,000; and the unexpended balance of the approprition'of $50,000 for developing and maintenance of said waterpower under the act of June 16, 1880, and the unexpended balance of $50,000 for continuing the improvement of the waterpower-pool under the act of March 3,1881, are hereby reappro-priated and made available for the purpose named in said acts: Provided, That no part of the said moneys hereby appropriated for completing the said water-power shall be expended until detailed plans and specifications for actual work to be done, the estimated cost of which shall be within the said appropriations, shall be prepared by the Secretary of War and assented to by the Moline Water-Power Company, with an agreement from said company that the expenditure of the sums hereby appropriated for continuing and completing the improvement oi the water-power pool according to such plans and specifications, and also the deepening of said canal to an average depth of at least 3 feet at its present width, and also the placing of six -openings for water-wheels, according to such plans and specifications, will be accented by the Moline Water-Power Company in full discharge of the obligation's of the United States to develop the water-power : And provided further, That the certificate of the commanding officer of the Rock Island Arsenal shall be conclusive evidence as to the required deepening of said canal and placing the said openings for water-wheels: And provided further, That before the expenditure of any part of the appropriations hereby made for deepening said canal and the placing of said openings for water-wheels, said Moline Water-Power Company shall give the Secretary of War satisfactory assurances and guarantees that it will complete the corresponding deepening of the tail-race above said canal at the same time the deepening of said canal shall be completed.”
The conditions which were to precede the expenditure of these appropriations were complied with, as appears by the *337 agreement of the parties dated August 28, 1882, and set forth in Exhibit C.
March 3, 1883, Congress made the following additional appropriation :
“For deepening the water-power canal, $20,000, the same to be expended as required by an act entitled ‘An act making: appropriations for sundry civil expenses of the government for the fiscal year ending June 30,1883,’ approved August 7,1882, and to be immediately available.”
The petition of the claimant fails to allege that these several appropriations were not fully and honestly expended upon the work, according to the terms of the several acts of Congress and the several agreements of the parties, but, on the contrary, states, without question of its truth, “ that the commanding officer at Rock Island Arsenal claims and represents that he has expended, in deepening said canal, all the money heretofore appropriated by Congress for that purpose.”
That is all the Secretary of War, in the three several agreements, contracted to do, and all he was authorized by the joint resolution and the several appropriation acts to undertake.
However great may be the grievances of the claimant, the petition does not set forth a cause of action upon which this court can render a judgment.
The demurrer is therefore sustained.